UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A<small>NTHONY</small> F<small>AWCETT</small>,
   Plaintiff,

No. 1:07-cv-1128

-v-

HONORABLE PAUL L. MALONEY

RUO W<small>ADE</small> W<small>AKEFIELD</small>,
   Defendant.

## OPINION AND ORDER DENYING
## PLAINTIFF'S MOTION FOR A NEW TRIAL

### I. Background

Plaintiff Anthony Fawcett, a *pro se* prisoner, filed a motion for a new trial under F<small>ED</small>. R. C<small>IV</small>. P<small>RO</small>. 59 regarding his civil rights action brought under 42 U.S.C. § 1983. In his complaint Plaintiff alleged that Defendant, prison guard Wade Wakefield, retaliated against him for filing grievances and assisting other prisoners in filing grievances. (Compl. at 3c.) Following trial, a jury returned a verdict of no cause of action in favor of Defendant. Plaintiff has now filed a motion for a new trial contending that the jury instructions offered at trial were improper because the Court did not instruct the jury that Plaintiff had a constitutionally protected right to assist other inmates in filing grievances against prison officials if they needed his aid to vindicate their constitutional right of access to the courts. Plaintiff contends the Court's failure to acknowledge such a constitutional right was plain error as it caused the jury to deliberate under an incorrect legal standard, affecting the core issue of the case and resulting in prejudice to Plaintiff.

### II. Standard of Review

The Federal Rules of Civil Procedure allow for a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."

Fed. R. Civ. P. 59(a)(1)(A). Courts have understood the provision to permit a new trial "when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1047–48 (6th Cir. 1996); *see also Mitchell v. Boelcke*, 440 F.3d 300, 303 (6th Cir. 2006).

Erroneous jury instructions may form the basis for a new trial. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Pursuant to FED. R. CIV. PRO. 51, a party must object to jury instructions during trial to preserve the objection. Grounds for objections to instructions must be specific and a party cannot offer different grounds in a motion for a new trial from those offered during trial. *Libbey-Owens-Ford Co. v. Ins. Co. of N. Am.*, 9 F.3d 422, 427 (6th Cir. 1993). Plaintiff objected to the instructions during trial and offered the same specific reasons for his objection that now form the basis of his motion for a new trial. (Tr. 21:19–22:12; Pl.'s Decl. in Lieu of Mar. 24, 2010 Jury Trial Tr. ¶ 2.)

The standard for a new trial based on improper jury instructions is demanding. *Roberts v. Galen of Virginia, Inc.*, 325 F.3d 776, 787 (6th Cir. 2003). The jury instructions should be reviewed "as a whole to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000); *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72 (6th Cir. 1990); *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1010–11 (6th Cir.1987). A new trial is necessary "on the basis of improper jury instructions only if the instructions, when viewed as a whole, were confusing, misleading and

prejudicial." *Roberts*, 325 F.3d at 787; *Kitchen*, 825 F.2d at 1011; *Beard*, 900 F.2d at 72–73. A court "will not reverse a decision on the basis of an erroneous jury instruction where the error is harmless." *Pivnick v. White, Getgey & Meyer Co.*, 552 F.3d 479, 488 (2009) (*quoting Barnes*, 201 F.3d at 822).

### III. Analysis

Plaintiff brought a retaliation claim under 42 U.S.C. § 1983. To establish a retaliation claim Plaintiff bears the burden of demonstrating:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Plaintiff now requests a new trial based on his assertion that the jury instruction relating to constitutionally protected conduct was a misstatement of the law. Specifically, Plaintiff argues that the Court erred in part by giving the following instruction:

> In order to prove this claim that Defendant Wakefield retaliated against him, the burden is on the Plaintiff Fawcett to establish by a preponderance of the evidence each of the following three elements:
> First, that Plaintiff Fawcett was engaged in protected conduct. Prisoners have a First Amendment right to file non-frivolous grievances against prison officials or threaten to sue an officer, but threatening an officer is not protected conduct. Inmates do not have a constitutional right to assist other prisoners in filing a grievance against prison officials.

(Tr. 11:5–11.) Plaintiff contends the instructions should have informed the jury that he had a constitutionally protected right to aid other inmates in filing grievances against prison officials if the other inmates were in need of his assistance. (Pl.'s Br. in Supp. of Mot. for a New Trial at 5–6.) Plaintiff argues that he had a "'derivative right' through those prisoners' because his

3

assistance was necessary to vindicate their rights, both their [F]irst [A]mendment right to petition the government for a redress of grievances and to access the courts thereafter." (Pl.'s Br. at 5.) According to Plaintiff, prisoner Isom in particular needed Plaintiff's help to navigate the grievance process and exercise his legal rights because he was "an aged prisoner, mentally 'touched' at that." (Pl.'s Reply at 3.) For similar reasons, Plaintiff argued for the inclusion of the language "who were ignorant of the law and needed his help to" in one of the proposed jury instructions. (Pl.'s Br. at 1.)

In response, Defendant argues that the Court properly excluded mention of a possible derivative right as it was unwarranted by the evidence presented at trial. (Def.'s Resp. to Pl.'s Mot. for a New Trial 1–2.) Defendant denies that Plaintiff had a right to assist other inmates with grievances, and argues any such help was unnecessary. (Def.'s Resp. at 1–4.) Defendant also suggests Plaintiff violated prison rules by accepting payment for his legal services, and that such violation of prison guidelines cannot constitute constitutionally protected conduct. (Def.'s Resp. at 4–5.)

Plaintiff's request for a new trial fails because he cannot establish that the jury instructions, reviewed as a whole, were "confusing, misleading and prejudicial." So far as it goes, the Court's statement that "[i]nmates do not have a constitutional right to assist other prisoners in filing a grievance against prison officials" is generally a correct statement of the law. *Thaddeus-X*, 175 F.3d at 395 (en banc); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Court may have erred, however, failing to instruct the jury that Fawcett would have a derivative constitutional right if his assistance was necessary to vindicate the other prisoner's right of access to the courts. *Thaddeus-X*, 175 F.3d at 395. However, the omission of a reference to a

4

possible derivative right constitutes harmless error because nothing presented at trial supported Plaintiff's claim that the other inmate could not meaningfully exercise his right to access the courts without Fawcett's help. Where a party does not have "sufficient evidence to support a jury verdict in his favor, any error, committed by the trial court, could not have affected [his] substantial rights, and therefore, is harmless error." *Rocha v. Great American Ins. Co.*, 850 F.2d 1095, 1098 (6th Cir. 1988). Satisfaction of the harmless error standard requires "fair assurance" that "the judgement was not substantially swayed by the error." *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 409 (6th Cir. 2006).

As a matter of law, there is no independent constitutionally protected right to assist other inmates with legal proceedings. *Thaddeus-X*, 175 F.3d at 395; *Gibbs*, 10 F.3d at 378; *see also Shaw v. Murphy*, 532 U.S. 223, 231 (2001) (finding no special right for prisoners to provide legal assistance to fellow inmates). Prisoners do, however, have a constitutionally protected right to access to the courts for "direct appeals, habeas corpus applications, and civil rights claims only." *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Thaddeus-X*, 175 F.3d at 391. Inmates also have a recognized right to file non-frivolous grievances against prison officials. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).

In order to protect access to the courts, inmates have been found to have a protected right to receive assistance from "jailhouse lawyers" where no other reasonable alternatives exist. *Gibbs*, 10 F.3d at 378; *see also Johnson v. Avery*, 393 U.S. 483, 490 (1969) ("[U]ntil the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation . . . barring inmates from

5

furnishing such assistance to other prisoners."). Consequently, to ensure access to the courts, an inmate may have a derivative right to assist another inmate if that assistance is truly necessary. *Thaddeus-X*, 175 F.3d at 395 ("[P]rison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court."); *Gibbs*, 10 F.3d at 378 ("[P]risoners are entitled to receive assistance from jailhouse lawyers where no reasonable alternatives are present and to deny this assistance denies the constitutional right of access to the courts."). This derivative right appears to include assisting inmates in the grievance process where it is necessary for meaningful access to the courts. *Smith v. Campbell*, 250 F.3d 1032, 1037 n.1 (6th Cir. 2001) (assuming, without deciding, that prisoner's involvement with other inmates' grievances was necessary for their access to the courts); *Herron*, 203 F.3d at 417 (holding plaintiff could claim a derivative right to assist a fellow inmate in arguing a grievance before the prison board).

To show a derivative right Plaintiff would need to establish the inmates he assisted needed his help to ensure access to the courts. *Thaddeus-X*, 175 F.3d at 395; *Gibbs*, 10 F.3d at 379. A denial of access to the courts cannot be made with merely a showing that the "prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. Plaintiff bears the burden of demonstrating that there were no other reasonable alternatives, meaning the legal services he provided are protected only "when a non-frivolous legal claim of his inmate/client's would otherwise be frustrated or impeded." *Watkins v. Phillips*, Nos. 98-3622, 98-3919, 1999 WL 801588**,** *2 (6th Cir. Sept. 27, 1999); *see also Gibbs*, 10 F.3d at 379.

Plaintiff presented no evidence at trial to indicate he could show by a preponderance of

6

the evidence that his aid was necessary for other inmates to access the courts and that his assistance was therefore protected conduct. Plaintiff contends in his arguments for a new trial that prisoner Isom was incapable of accessing the court system on his own because he was "an aged prisoner, mentally 'touched' at that." (Pl.'s Reply at Br. 3.) However Plaintiff did not offer any evidence at trial to establish that Isom was truly in need of Plaintiff's assistance. *Cf. Thaddeus-X*, 175 F.3d at 395–96 (finding a derivative right where inmate receiving assistance had no knowledge of the law, was being held in administrative segregation, and could only access legal books by requesting them by title). Inmate Isom did not testify at trial, and his out-of-court statement was excluded as hearsay. (Def.'s Resp. at 3.) The only evidence he offered as to inmate Isom's mental health or ability came from Officer Joseph Ribesky, who is not a physician, nurse, psychologist, or other medical professional. (Pl.'s Decl. at ¶ 4.) Nothing presented established prisoner Isom's inability to pursue his own grievances. Even inmate Isom's out-of-court declaration, while indicating that Plaintiff assisted him, never suggested that Isom was incapable of filing his grievances without Plaintiff's assistance. (Pl.'s Br., Ex. B.)

In an effort to establish that Isom had no reasonable alternatives to his assistance, Plaintiff suggests that the law library available to inmates at Earnest C. Brooks Correctional Facility in Muskegon, Michigan was inadequate. (Pl.'s Br. at 4.) He relies on testimony by Defendant Wakefield and Officer Ribesky indicating that they permitted Plaintiff to "carry on his jailhouse lawyering as long as it did not cause any problems" as proof of the inadequacy of the library. (*Id.*) Such testimony says nothing necessarily about the adequacy of the library and merely indicates these two guards showed tolerance for Plaintiff's assistance of other inmates. Nor does the testimony support Plaintiff's contention that prisoner Isom was in particular need of

7

assistance in filing grievances due to his age, alleged mental defect, or other circumstances.

Finally, by Plaintiff's own admission at trial, he charged inmates for legal assistance in violation of prison policy. (Def.'s Resp. at 4.) Plaintiff attempts to dispute the allegation, noting he "never testified at [his] trial that [he] asked for or received any payment from prisoner Isom for helping him prepare the grievance against the Defendant." (Pl.'s Decl. in Lieu of Mar. 24, 2010 Jury Trial Tr. ¶ 11.) However at trial, Plaintiff did not deny charging prisoner Isom, and even now he only notes that he did not testify affirmatively that he charged Isom. (Pl.'s Decl. at ¶ 11.) Plaintiff's testimony, and testimony he elicited from witnesses, indicate a common practice of charging for legal services, a practice Plaintiff admits to following. (Def.'s Resp. at 4.)

Absent constitutional infirmity in the relevant prison regulation, conduct which violates the regulation is not protected. *Thaddeus-X*, 175 F.3d at 395. In *Thaddeus-X* the court was clear that "[i]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Id.*; *see also Campbell*, 250 F.3d at 1037 ("[W]hile a prisoner may have a right to file grievances against prison officials, he or she cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives."). The potential for abuse has been held to justify denying prisoners the ability to collect fees for legal services rendered to other inmates. *Henderson v. Ricketts*, 499 F. Supp. 1066, 1068 (D.C. Colo. 1980); *see also Johnson*, 393 U.S. at 488–90 (recognizing the legitimacy of prison regulations involving the "imposition of punishment for the giving or receipt of consideration in connection" with jailhouse lawyering); *Battle v. Anderson*, 614 F.2d 251, 255 (10th Cir. 1980) (listing the practices of "favoritism, bribery and physical abuse upon the

illiterate and ignorant prisoner" among the problems related to jailhouse lawyers). There is strong reason to believe that Plaintiff charged for his legal services in violation of prison regulations, and such a violation could not constitute protected conduct. *Smith v. Parker*, No. 97-5317, 2001 WL 302054, *2 (6th Cir. March 22, 2001) (holding that conduct was not protected if inmate charged for his legal services in violation of prison rules). In short, because Plaintiff's actions could not reasonably be seen as protected conduct the omission of instructions on a derivative right to assist other prisoners constitutes harmless error.

## **ORDER**

For the reasons provided in the accompanying opinion, Plaintiff's motion for a new trial (Dkt. No. 146) is **DENIED. IT IS SO ORDERED.**


Date:  August 11, 2010              /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    Chief United States District Judge